***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On August 12, 2002, Defendant-Employer hired Plaintiff to be a manager at their restaurant located in Mocksville, North Carolina.
3. On April 1, 2005, Plaintiff was an employee of Defendant-Employer.
4. Defendant-Carrier provided workers' compensation insurance coverage for Plaintiff's workers' compensation claim at all times relevant to these proceedings.
5. On April 1, 2005, Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer when she fell and injured her lower back and right leg.
6. Plaintiff last worked for Defendant-Employer on April 1, 2005.
7. Plaintiff's average weekly wage was $654.36, yielding a compensation rate of $436.26.
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — Pre-trial Agreement;
 b. Stipulated Exhibit Two (2) — North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit Three (3) — Plaintiff's medical records;
 d. Stipulated Exhibit Four (4) — Additional medical records of Plaintiff;
 e. Plaintiff's Exhibit One (1) — Plaintiff's work history;
 f. Plaintiff's Exhibit Two (2) — Correspondence from Plaintiff's Counsel to Defendant-Carrier dated October 17, 2005; *Page 3 
 g. Plaintiff's Exhibit Three (3) — Correspondence from Plaintiff's counsel to Defendants' counsel dated October 18, 2007 with enclosure;
 h. Plaintiff's Exhibit Four (4) — Correspondence from Defendants' counsel to Plaintiff's counsel dated December 17, 2007;
 i. Plaintiff's Exhibit Five (5) — Plaintiff's medication list;
 j. Plaintiff's Exhibit Six (6) — Plaintiff's job search log;
 k. Plaintiff's Exhibit Seven (7) — Plaintiff's Answers to Defendants' First Set of Interrogatories and Responses to Request for Production of Documents to Plaintiff;
 l. Plaintiff's Exhibit Eight (8) — Defendants' Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents;
 m. Defendants' Exhibit One (1) — Plaintiff's personnel file.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff is entitled to any further workers' compensation benefits for her April 1, 2005 work injury?
2. Whether Plaintiff suffers from depression related to her chronic lower back pain?
3. Whether Defendants defended this claim without reasonable grounds?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. Plaintiff is 39 years old, with a date of birth of August 26, 1970. Plaintiff has a high school diploma, and a work history of 20 years of employment in unskilled positions, including employment in the retail and fast food industries. Plaintiff's job duties in these unskilled positions required long periods of walking and standing. Plaintiff has no special job skills or training.
2. Plaintiff has a pre-existing history of cervical spine problems. While at home in early February 2002, Plaintiff experienced a sudden onset of neck pain radiating into her left arm. Cervical magnetic resonance imaging (MRI) revealed a left-sided ruptured disc at the C6-C7 level of the spine. Dr. Melissa Renee Champe-Seagle, an internist and Plaintiff's primary care physician, referred Plaintiff to Dr. Kenneth Ervin Wood, an orthopaedist, who recommended neck surgery. On March 6, 2002, Plaintiff underwent an anterior cervical micro-discectomy and inter-body fusion surgery at the C6-C7 level of the spine performed by Dr. Wood. By April 16, 2002, Plaintiff was doing well, and had complaints of only minimal pain.
3. On August 12, 2002, Defendant-Employer hired Plaintiff to be the manager at its restaurant located in Mocksville, North Carolina. Plaintiff's duties as the manager of Defendant-Employer's restaurant included long hours of standing and walking. Additionally, Plaintiff frequently had to bend and lift objects weighing up to 20 pounds.
4. On March 9, 2005, Plaintiff presented to Dr. Champe-Seagle and reported a three (3) month history of right leg pain with occasional burning pain in her right foot which interfered with her sleep. Plaintiff denied having any swelling, numbness, or weakness of the right leg, or lower back pain. Dr. Champe-Seagle prescribed Elavil. Plaintiff did not miss any work due to these right leg pain complaints. *Page 5 
5. On April 1, 2005, Plaintiff's supervisor, Ms. Lisa Mounts, came to her restaurant in order to do a cash count of all of the cash registers. When Ms. Mounts asked Plaintiff whether there were any cash shortages, Plaintiff advised her that because the restaurant was understaffed that day, and she did not think that she would be able to go to the bank, she gave her husband $200.00 and asked him to get change in the form of 200, one (1) dollar bills, which was against Defendant-Employer's policies and procedures. However, before Ms. Mounts left the store, Plaintiff's husband returned with the 200, one (1) dollar bills. Ms. Mounts did not discipline Plaintiff in any way that day. Instead, Ms. Mounts told Plaintiff that they would discuss the issue the following Monday. The Full Commission finds credible Plaintiff's testimony that she had no reason to think that she would be disciplined for this incident because she told Ms. Mounts the truth; Ms. Mounts was aware of the understaffing on that day which kept Plaintiff from going to the bank; Ms. Mounts allowed her husband to sometimes work "off the clock" and her husband returned with the 200 one (1) dollar bills. After this incident, Defendant-Employer did not discipline Plaintiff for giving her husband $200.00 out of a cash register to get change.
6. Subsequent to the incident with the $200.00, and sometime during the evening hours of April 1, 2005, Plaintiff was working for Defendant-Employer when she slipped on some water on the floor as she was carrying a sandwich tray. Plaintiff lost her balance and her feet went out from under her, causing her to twist her lower back and fall, landing on the floor on her lower back and right hip. Plaintiff's lower back and right leg pain was so severe that she was unable to stand. Emergency medical personnel transported Plaintiff to Davie County Hospital in Mocksville, North Carolina, and noted that Plaintiff had a small contusion on her lower back. Plaintiff received a diagnosis of lumbar strain and a note taking her out of work until April 5, 2005. On April 2, 2005, Defendants arranged for Plaintiff to undergo a lumbar MRI, which *Page 6 
revealed that she did not have a ruptured disc, but did have pre-existing degenerative disc disease with minimal bulging discs at the L4-L5 and L5-S1 levels of the spine.
7. On April 26, 2005, Defendants filed a Form 63 listing April 1, 2005 as the date Plaintiff's disability began and April 22, 2005 as the date they began paying temporary total disability compensation. Defendants failed to deny Plaintiff's workers' compensation claim within 90 days thereafter. Thus, Plaintiff's workers' compensation claim is deemed admitted.
8. On May 11, 2005, Plaintiff presented for treatment to Dr. John Gregory Bentley, a pain management specialist. Dr. Bentley ordered physical therapy and wrote Plaintiff out of work until June 9, 2005. On June 9, 2005, Plaintiff returned to Dr. Bentley, at which time he noted that physical therapy seemed to be aggravating Plaintiff's lower back and right leg pain, but prescription pain medication did help to provide some relief. Dr. Bentley ordered a right leg nerve conduction study, and continued to keep Plaintiff out of work. On July 6, 2005, Plaintiff underwent a right leg nerve conduction study, which was within normal limits. On August 17, 2005, Dr. Bentley referred Plaintiff back to Dr. Champe-Seagle for ongoing pain management, and released her to return to work without any restrictions.
9. On October 20, 2005, Plaintiff returned to Dr. Champe-Seagle, with continued complaints of lower back and right leg pain. Dr. Champe-Seagle diagnosed Plaintiff with lower back pain with radiculopathy, and prescribed ongoing pain medication. Plaintiff promptly notified Defendants of Dr. Bentley's referral back to Dr. Champe-Seagle.
10. On November 30, 2005, Plaintiff presented to Dr. Jeffrey Alan Baker, an orthopaedist, with continued complaints of lower back and right leg pain. The lower back pain was worse than the right leg pain. Dr. Baker noted that Plaintiff's pain worsened with standing, *Page 7 
walking, sitting, and transitioning. He diagnosed Plaintiff with lumbar degenerative disc disease aggravated by her April 1, 2005 work injury.
11. From April 1, 2005 through the remainder of 2005, Plaintiff continued to be unable to earn wages in any employment due to chronic moderate to severe lower back and right leg pain resulting from her work injury, which worsened with minimal activities, and improved some with lying down and the use of prescription pain medication. Defendants continued to pay Plaintiff medical and temporary total disability compensation throughout this time period. Plaintiff's testimony concerning how her pain affected her activities is accepted as credible.
12. On January 9, 2006, Dr. Baker reviewed Plaintiff's April 2, 2005 lumbar MRI, and interpreted it as revealing no disc herniation. Dr. Baker diagnosed Plaintiff with lumbar degeneration, and was of the opinion that she "may have diskogenic back pain from a tear in the disk," but he did not think that Plaintiff was a candidate for surgery. Instead, Dr. Baker recommended that Plaintiff might benefit from a work-conditioning program as well as water therapy. Although Dr. Baker noted that Plaintiff "will need to find some other form of work that will allow her to change positions to accommodate her pain," he released her to return to work without restrictions as of January 25, 2006.
13. On May 15, 2006, Plaintiff returned to Dr. Champe-Seagle, who noted that Plaintiff "can't really do a lot" due to her lower back pain. In addition, Dr. Champe-Seagle noted that Plaintiff was developing symptoms of depression, including crying spells and insomnia. Dr. Champe-Seagle opined that Plaintiff's lower back pain caused her depression, and prescribed Cymbalta, along with her other pain medications.
14. From 2006 through 2007, Plaintiff's lower back and right leg pain failed to improve. Dr. Champe-Seagle continued to treat Plaintiff with prescription pain medication, and *Page 8 
to limit her physical activities in order to control the severity of her lower back and right leg pain. On May 2, 2007, Dr. Champe-Seagle noted that Plaintiff continued to have lower back pain, and that she "hurt all over," especially in her arms and neck.
15. On September 5, 2007, Dr. Champe-Seagle wrote Plaintiff out of work, noting that she was unable to work "due to back condition." On October 17, 2007, Dr. Champe-Seagle recommended that Plaintiff undergo another lumbar MRI in order to determine if her degenerative disc disease worsened, or if her lumbar discs were pressing on nerves. Dr. Champe-Seagle also felt that a new MRI would be helpful in order to determine whether additional treatment might be available to treat Plaintiff's lower back and right leg pain. However, Defendants refused to pay for the lumbar MRI. In addition, Defendants failed to pay Dr. Champe-Seagle for her treatment of Plaintiff in connection with Plaintiff's lower back and right leg pain resulting from her April 1, 2005 work injury.
16. On December 12, 2007, Plaintiff returned to Dr. Baker's office at Defendants' request; however, Mr. Todd Edward Kennedy, Dr. Baker's physician's assistant, saw Plaintiff. Mr. Kennedy also recommended that Plaintiff have another lumbar MRI in order to help evaluate further treatment recommendations for her lower back and right leg pain. However, Defendants refused to pay for the lumbar MRI.
17. On January 16, 2008, Plaintiff presented to Dr. Champe-Seagle again, at which time she reported that her lower back pain was somewhat better, provided she took three (3) Oxycodone pills per day in order to manage the pain. On April 23, 2008, Plaintiff returned to Dr. Champe-Seagle and reported that when she walked, she felt a burning sensation and that walking was becoming more difficult. On June 23, 2008, Plaintiff reported to Dr. Champe-Seagle that her symptoms of depression were worse and that her crying spells had increased. In *Page 9 
addition, Plaintiff reported that although she did not have generalized weakness, sometimes her lower back pain would make her feet feel as though she were going to fall. On August 22, 2008, Plaintiff returned for follow-up with Dr. Champe-Seagle regarding her lower back pain, and reported that her symptoms of depression and back pain were better, but that she had a constant level of pain between four (4) and six (6) on a scale of one (1) to 10.
18. On August 29, 2008, Dr. Champe-Seagle responded to correspondence from Plaintiff's counsel concerning Plaintiff's lower back and right leg pain. Based upon the written statement of assumed facts provided, Dr. Champe-Seagle opined that Plaintiff needed to undergo another lumbar MRI, that Plaintiff's complaints of lower back and right leg pain in the period following her April 1, 2005 work injury were genuine, and that Plaintiff's work injury materially aggravated her pre-existing lumbar degenerative disc disease. Further, Dr. Champe-Seagle opined that Plaintiff's lower back pain caused her to develop depression, that Plaintiff would benefit from a mental health evaluation, and that Plaintiff is "probably unable to perform sustained work activities in the competitive employment market due to her low back pain condition." At her deposition, Dr. Champe-Seagle reiterated these same opinions.
19. At his deposition, Dr. Bentley opined that Plaintiff was either feigning or exaggerating her complaints of lower back and right leg pain, based upon his finding during his physical examination where Plaintiff exhibited all five (5) positive Waddell signs. Dr. Bentley was of the opinion that there was no physical or organic basis for Plaintiff's pain. However, Dr. Bentley agreed that Plaintiff's complaints of lower back and right leg pain were real and legitimate to her, and that he treats many patients who, like Plaintiff, continue to complain of chronic pain, despite receiving good medical care. *Page 10 
20. At his deposition, Dr. Baker testified that he gives little weight to positive Waddell's signs in evaluating his lower back pain patients. Dr. Baker opined that Plaintiff would benefit from another lumbar MRI, and that any further evaluation of Plaintiff's medical care with respect to her complaints of lower back and right leg pain should be predicated upon the results of a more recent lumbar MRI. Dr. Baker also agreed that he treats many patients who, like Plaintiff, continue to complain of chronic pain, despite receiving good medical care.
21. The Full Commission gives greater weight to the opinion testimony of Dr. Champe-Seagle than to any contrary opinions of Dr. Bentley or Dr. Baker, since Dr. Champe-Seagle has treated Plaintiff for her work injury over a period of years and has had more opportunities to examine and observe Plaintiff.
22. The Full Commission finds Plaintiff's testimony concerning the nature and extent of her chronic lower back and right leg pain since her April 1, 2005 work injury to be credible. Plaintiff suffers from constant moderate to severe lower back pain, made worse by minimal physical activities and improved some by pain medication and complete rest. Plaintiff also suffers from intermittent right leg pain, which also becomes worse by minimal physical activities.
23. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's April 1, 2005 work injury materially aggravated her non-disabling, pre-existing lumbar degenerative disc disease and made her condition become symptomatic and disabling. The Full Commission further finds that Plaintiff's lower back and right leg pain caused her to develop depression and that Plaintiff would benefit from a psychological evaluation.
24. The Full Commission finds, based upon the greater weight of the evidence, that despite Plaintiff's chronic lower back and right leg pain, she has been willing to accept and try *Page 11 
employment if given the opportunity to see what she could do in terms of sustained work activities. From April 2007 through August 2008, Plaintiff made reasonable efforts to seek suitable employment at approximately 120 different potential employers without success. Defendants have been unwilling to provide Plaintiff with any help in trying to find suitable employment.
25. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff continues to be unable to earn wages in any employment in the period since her April 1, 2005 work injury through the present due to physical limitations resulting from her lower back and right leg pain and also related depression.
26. The Full Commission finds, based upon the greater weight of the evidence, that the treatment provided to Plaintiff by Dr. Champe-Seagle and through referrals from him, related to her compensable injury, has been reasonably required to effect a cure, provide relief or lessen her disability. The Full Commission further finds that a current lumbar MRI and any other testing and/or treatment recommended by Dr. Champe-Seagle are reasonably required to provide relief or lessen Plaintiff's disability and should be authorized.
27. Defendants' sought to terminate Plaintiff's workers' compensation benefits through the filing of a Form 24 on August 28, 2007, based upon the opinion of Dr. Bentley rendered on or about August 17, 2005 and the opinion of Dr. Baker rendered on or about January 25, 2006, that Plaintiff could return to work without restrictions. These opinions were more than a year old at the time of the filing of the Form 24. Since later medical records and Plaintiff's own testimony established that Plaintiff's medical and psychological condition resulting from her April 1, 2005 work injury continued to worsen subsequent to Dr. Bentley and Dr. Baker forming their opinions regarding Plaintiff's ability to return to work and that Plaintiff remained *Page 12 
disabled, the Full Commission finds that Defendants' Form 24 application to terminate or suspend benefits should be denied.
28. The Full Commission finds, based upon the greater weight of the evidence, that Defendants defended this claim with reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on April 1, 2005 to her lower back and right leg. N.C. Gen. Stat. § 97-2(6) (2008).
2. As a result of Plaintiff's April 1, 2005 work injury, she sustained a lower back injury which materially aggravated her pre-existing, non-disabling lumbar degenerative disc disease to such an extent that her resulting lower back condition became disabling. N.C. Gen. Stat. § 97-2(6) (2008); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory BusinessFurniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
3. As a result of Plaintiff's lower back and right leg pain causally related to her compensable injury, she developed depression which is also compensable. N.C. Gen. Stat. § 97-2(6) (2008);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000).
4. As a result of Plaintiff's April 1, 2005 work injury, Plaintiff is entitled to temporary total disability compensation at the rate of $436.26 per week from April 2, 2005 through the present and continuing until further order of the North Carolina Industrial *Page 13 
Commission. Plaintiff has proven through medical evidence and her testimony, which has been found to be credible, that she has been incapable of working since her injury. The evidence establishes that since her injury, Plaintiff has been medically removed from work for periods of time and that during other times it would have been futile for her to seek employment due to conditions related to her injury, combined with other vocational factors, and also that when she did look for suitable employment that she felt she might be capable of performing, she was unsuccessful. N.C. Gen. Stat. § 97-29 (2008); Russell v. Lowes Prod.Distribution, 108 N.C. App. 762 (1993).
5. As a result of Plaintiff's April 1, 2005 work injury, Plaintiff is entitled to have Defendants pay for all medical treatment reasonably related to her work injury. Dr. Champe-Seagle is hereby approved as Plaintiff's authorized treating physician for her lower back and right leg pain and resulting depression. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008).
6. Defendants' sought to terminate Plaintiff's workers' compensation benefits based upon the opinion of Dr. Bentley as of August 17, 2005 and Dr. Baker as of January 25, 2006, well over a year after they filed their Form 24 on August 28, 2007, that Plaintiff could return to work without restrictions. Since later medical records and Plaintiff's testimony established that Plaintiff's medical and psychological condition with respect to her April 1, 2005 work injury continued to worsen subsequent to Dr. Bentley and Dr. Baker forming their opinions regarding Plaintiff's ability to return to work and that Plaintiff remained disabled, Defendants' Form 24 must be denied. N.C. Gen. Stat. §§ 97-18.1; 97-25 (2008).
7. Defendants defended this claim with reasonable grounds. N.C. Gen. Stat. § 97-88.1 (2008).
 *********** *Page 14 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $436.26 per week from April 2, 2005 and continuing until further order of the North Carolina Industrial Commission. Any accrued compensation shall be paid in a lump sum. Defendants are allowed a credit for compensation already paid.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's April 1, 2005 work injury, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act. Plaintiff is entitled to future medical treatment, which is reasonably related to her injury.
4. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of the accrued compensation owed to Plaintiff and every fourth (4th) check thereafter.
5. Dr. Champe-Seagle is hereby approved as Plaintiff's authorized treating physician for her lower back and right leg pain and resulting depression.
6. Defendants shall pay the costs of these proceedings.
This the ___ day of January 2010.
S/___________________ *Page 15 
BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1